business, to collect its revenues, and pay its expenses, and that, after that had been done, it was to pay its net income over to the United Press of Illinois. The essential part of this contract was that the business of the United Press of New York remained in that corporation, and the Illinois corporation had no control over it; nor any right to interfere with it. All that was reserved to it was the right to receive the net income after the payment of the expenses. Whatever may have been its interest in that income, the contract certainly did not make the United Press of New York its agent to conduct the business so far as third parties were concerned. Upon the whole case, we think that it was erroneous to order a verdict for the defendant, but that the question whether the New York corporation was the person interested in this contract should have been submitted to the jury, if, indeed, the evidence did not establish that fact as a legal proposition.

The judgment must, therefore, be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.

---

(58 App. Div. 11.)

RADJAVILLER v. THIRD AVE. R. CO.

(Supreme Court, Appellate Division, First Department. February 8, 1901.)

1. CARRIERS—INJURY TO PASSENGER—FAILURE TO STOP—WEIGHT OF EVIDENCE.
   Plaintiff, a passenger in a street car, and two witnesses, testified that the car came to a stop at the place where she was to alight, and, without waiting for her to alight in safety, it suddenly started, throwing her to the ground, and three witnesses for the street-car company testified that the car did not stop, but that the plaintiff deliberately stepped off and was injured. Held, that a verdict for plaintiff was not so against the weight of evidence and the probabilities of the case as to require the setting aside of the verdict.

2. SAME—DAMAGES—PLEADING—ADMISSIBILITY OF EVIDENCE.
   Under a complaint alleging injuries to the left side of plaintiff's head and her entire left side, testimony showing an injury to plaintiff's left ear is competent.

3. SAME—TRIAL—INSTRUCTIONS—FUTURE PAIN AND SUFFERING.
   In an action against a carrier for injury to a passenger, testimony that plaintiff was still suffering from headache and from a buzzing pain in her ear, that her weight had been reduced 20 pounds, and of her physician that he found, in addition to her other injuries, bleeding of the ear and swelling of the head, and that the injury to her head amounted to concussion of the brain, was sufficient to justify a charge on future pain and suffering.

4. SAME—EXCEPTIONS—ABSTRACT PROPOSITIONS.
   The right, under the evidence, to present the question of future pain and suffering to the jury, not having been called to the attention of the court, an exception to what was a correct rule of damages, as an abstract proposition of law, on the question of future pain and suffering, presented no reversible error.

5. DAMAGES.
   A verdict for $1,400 for injuries is not excessive, the testimony showing that plaintiff was rendered unconscious by the accident, and remained so for three days; that her knee and elbow were bruised and bleeding; that the left side of her head was swollen; her ear was bleeding; that she was in bed three weeks, and at home for seven weeks; had suffered pain in her head and hip, and at the time of the trial had pains in her

ear; that her ear buzzed, and that she had headaches; and that her weight was reduced 20 pounds.

Van Brunt, P. J., and Ingraham, J., dissenting.

Appeal from trial term, New York county.

Action by Kate Radjaviller, an infant, by Elias Radjaviller, her guardian ad litem, against the Third Avenue Railroad Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

The action is brought to recover for injuries sustained by Kate Radjaviller, a young woman of 18 years, on the afternoon of June 5, 1898, at 169th street and Amsterdam avenue, through the alleged negligence of defendant's servants in starting a north-bound car while she was leaving it. The complaint states that, after several passengers had alighted, she, having signaled the conductor, was also attempting to do so, when the car started, and threw her upon the ground, "where she lay unconscious, * * * and sustained severe injuries on her left foot, left arm, left side of her head, and her entire left side," and that she will be unable to do any work, and has suffered great pain, "and will continue to suffer for some time to come." The plaintiff testified that on the day of the accident she boarded an Amsterdam avenue car in company with Ike Berger, intending to go to a picnic in a park at 169th street; that "there were two cars hitched together, and I was in the last car, which was a closed car; the first car was an open car; I was sitting in the middle of a closed car; he [Berger] was seated on the other side;" that she raised her hand, showing the conductor she wanted to stop at 169th street, where Berger had told her they were to go, and from the car she saw people on the sidewalk who were awaiting her; that many people got off the car, and she waited for Ike Berger to come near her, and people were standing up ready to get off the car after them; that she was holding onto the car when the bell rang, and it gave a jerk, and she was thrown to the ground; that the car had been standing still; that she was unconscious, and, when she came to, her knee and elbow were bruised and bleeding, and the left side of her head was swollen and her ear was bleeding; that she was in bed three weeks, and at home for seven weeks, and had severe pains in her head and hip, and even now she has pain in her ear, and her ear buzzes, and she has headaches; that she weighs now 120, and before the accident weighed 140, pounds. Ike Berger corroborated the plaintiff's testimony, saying: "As the car was stopped, as she was stepping off the car, with one hand holding the rail and the other foot on the ground, and the conductor rang the bell suddenly. The car gave a jerk, and threw her off. I stayed on the car, and the car went on with me. * * * I said to the conductor, 'Stop the car.' He didn't stop, * * * and I had to jump off the car, and I fell myself, too." "The car stops 170th street, but Miss Radjaviller fell at 169th street." A witness named Feller testified that he was standing on the corner of 169th street, and saw the plaintiff and Berger on the car, and had tickets for them as well as for others to whom he sold tickets; that the car stopped at 169th street, and there were several people got off first,—five or six or seven; that when the plaintiff was standing on the step the conductor rang the bell, and she went down; that she was bleeding from the ear and her knee. Another witness testified that the girl was bleeding from the ear and her clothes were torn. Her mother testified that she had a bruised knee and arm, and her head was swollen. Plaintiff's physician testified that he found a swelling on the left side of her head, bleeding from her ear, bruises on the left elbow, and bruises on the left leg, and treated her till June 25th; that the head injuries were concussion of the brain, and the bleeding at the ear lasted for three days; that the girl first recovered consciousness after he saw her on the 8th. The conductor of the car says he saw the plaintiff about the middle of the car, and just before the car reached 169th street she came to the rear platform, but gave no signal to stop, and he saw her working her way to the step, and she got down on the step, and he put his hand on her, and told her not to get off the car until it stopped, and rang the bell when they

were past 169th street, but she stepped off when the car was in motion, not having stopped at all, about 20 feet above 169th street; that he then gave three bells to stop at once; that he knew there was a picnic park at 169th street, but no one signaled to get off there; that "this lady got up just south of 169th street to get off that car before she had reached the crossing. As soon as I found out that she wanted to get off at 169th street, I rang the bell. I told her not to get off the car until it stopped. She then got down on the step after that. I told her the second time not to get off. * * * No one else wanted to get off at that place. * * * We were too far past 169th street to stop, and I gave the bell that meant to stop at 170th street." The witness further said that they had just passed 169th street when he gave the bell, but she was on the platform when they were crossing that street; that he did not see Ike Berger fall off, but the car stopped about the middle of the block; that he never saw the lawyers about the case nor spoke to any one about it. The conductor on the front car and the motorman said that there had been no stop at 169th street; that the first bell came when they were past that street, and three bells soon after, and the car stopped near 170th street. Luke Brennan testified that he was a passenger on the rear car; that "the lady got up to walk out of the car, and she walked out of the door; the conductor gave a bell, and she walked right out, and he told her to wait until the car would stop; he tapped her on the shoulder, and she stepped on the step, and she stepped right off." He further testified: "I do not know whether that car stopped at 169th street. It did not stop. I do not know whether the car stopped at 170th street." Patrick Casey testified that he was a passenger standing on the rear platform of the car, and saw the lady coming through, and she stopped a few moments on the rear platform, and then got on the step, and deliberately stepped off and fell; that "the conductor pulled the bell when he saw her coming through the car"; that Berger stepped off afterwards, and fell also. A policeman said he saw the accident, and was standing at the time on the east side of Amsterdam avenue, and, as the car passed him, this lady deliberately walked off the car, and fell on her left side; that he saw her ear, and there was no blood there. Berger and the plaintiff, being recalled, denied that the conductor had told the latter not to step off or had touched her, and Berger and Feller denied that the policeman was on the east side, and said that he came across the street. The jury returned a sealed verdict for $1,400, and from the judgment thereupon entered and from order denying motion for a new trial the defendant appeals.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Eugene Treadwell, for appellant.

Alex Rosenthal, for respondent.

O'BRIEN, J. It is insisted upon this appeal that the verdict is against the weight of evidence. The plaintiff, however, is corroborated by two witnesses, and, though her version is met by opposing testimony of at least three witnesses for the defendant, who testified that she stepped off the car while it was in motion, we do not think that the preponderance is so great that we would be justified in disturbing the verdict of the jury rendered upon conflicting testimony. It is admitted that, as the car approached 169th street, the plaintiff evidenced to the conductor her intention to alight, and that she proceeded to the rear of the car, so as to be in readiness to do so when the car should stop at that street. At this point the conflict begins, the defendant's witnesses stating that, although the car did not stop at 169th street, the plaintiff deliberately stepped off and was injured; and, on the other hand, the plaintiff and her witnesses tes-

tifying that the car came to a stop at that place, and, without affording her an opportunity to alight in safety, it was suddenly started, throwing her to the ground, and causing the injuries described. Her story, supported, as it is, by other testimony, is equally as natural and probable as that of the defendant's witnesses; for, according to the latter, we must infer that the plaintiff deliberately stepped off the car while it was in full motion,—a venture which even an active man, unincumbered by the apparel of a woman, could not make without the probability of being injured.

The second error assigned is in the admission of evidence respecting injuries which it is alleged were not pleaded, and in the charge to the jury that they could award damages therefor. The complaint, after asserting negligence, stated that the plaintiff "sustained severe injuries on her left foot, left arm, left side of her head, and her entire left side, compelling and necessitating said plaintiff to remain confined to her bed, under the care * * * of a physician, from the day of such injuries, and is still under the care, charge, and control of a physician, to alleviate her pains and sufferings." Under this allegation, she was permitted to introduce testimony showing that she sustained an injury to the left ear; and this, it is claimed, was error. The ruling admitting such testimony, we think, is fully supported by the following authorities: Quirk v. Siegel-Cooper Co., 43 App. Div. 464, 60 N. Y. Supp. 228; Geoghegan v. Railroad Co., 51 App. Div. 369, 64 N. Y. Supp. 630; Ackman v. Railroad Co., 52 App. Div. 483, 65 N. Y. Supp. 97; Kleiner v. Railroad Co., 162 N. Y. 193, 56 N. E. 497.

The remaining point is an exception to the following charge of the court to the jury: "If from the evidence you are satisfied that the plaintiff in the future will necessarily suffer from the injuries, you may award damages for such future pain and suffering. That must be taken into consideration by the jury in determining what damages the plaintiff should receive." This is a good abstract statement of the rule of damages, and the most that can be urged against it is that it was not applicable to the facts proved. The judge's attention, however, was not called to what is now urged, that there was no evidence of future pain and suffering. The exception was taken to the statement as a proposition of law, although, as we have said, considered in the abstract, it was a correct statement of a rule of damage. The court did not, as contended by the appellant,—nor is the language· used susceptible of any such construction,—charge the jury that they might award damages for future pain and suffering. What the court said was that, if from the evidence the jury were satisfied that in the future the plaintiff would necessarily suffer, they might award damages for such suffering; or, in other words, that, in cases where from the evidence it appeared with reasonable certainty that there would necessarily be pain and suffering, the jury could consider the question of future pain and suffering.

Apart, however, from this discussion, we think there was here sufficient evidence from which the jury might infer future pain and suffering. Besides the description of her injuries, the plaintiff stated that, on the very day of the trial, she was still suffering from head-

aches, and from buzzing and pain in the ear, and her weight had been reduced from 140 to 120 pounds; and the physician testified that during the three weeks he was attending her he found, in addition to her other injuries, bleeding of the ear and swelling of the head, and the injuries to her head amounted to concussion of the brain. Unless it is assumed that the conditions which the plaintiff describes resulting from concussion of the brain,—headaches and pain and buzzing in the ear,—down to the time of the trial, should thereupon immediately cease, there was, we think, some evidence, though slight, upon the question of future pain and suffering. Whether there was or not, however, was left to the jury to determine; and the right, under the evidence, to present the question to the jury not having been called to the attention of the court, an exception to what was, as an abstract proposition of law, a correct rule of damages, presents no reversible error. That the defendant was in no way injured by what was said upon the subject of damages appears from the clear and able charge of the judge, which carefully eliminated every element of damage other than those for which recovery could be had. The verdict of $1,400, considering the extent and nature of the plaintiff's injuries, must be regarded as moderate and fair.

We think that the judgment and order should be affirmed, with costs.

RUMSEY and HATCH, JJ., concur.

VAN BRUNT, P. J. (dissenting). I think it was error to leave to the jury the question of damages for future pain and suffering. There was no evidence to show what would be the probable duration of the pains, if they existed at the trial, and the jury were simply allowed to speculate upon this point. The question of future pain and suffering was left entirely to the imagination of the jury. There was no evidence to guide them.

INGRAHAM, J., concurs.